1   KAPLAN FOX & KILSHEIMER LLP
    Laurence D. King (SBN 206423)
2   *lking@kaplanfox.com*
    Mario M. Choi (SBN 243409)
3   *mchoi@kaplanfox.com*
    350 Sansome Street, Suite 400
4   San Francisco, CA  94104
    Telephone: (415) 772-4700
5   Facsimile: (415) 772-4709

6   KAPLAN FOX & KILSHEIMER LLP
    Frederic S. Fox (to be admitted *pro hac vice*)
7   *ffox@kaplanfox.com*
    Donald R. Hall (to be admitted *pro hac vice*)
8   *dhall@kaplanfox.com*
    Jeffrey P. Campisi (to be admitted *pro hac vice*)
9   *jcampisi@kaplanfox.com*
    850 Third Avenue, 14th Floor
10  New York, NY 10022
    Telephone: (212) 687-1980
11  Facsimile: (212) 687-7714

12  *Attorneys for Plaintiff*

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16

17  CARLOS MAIA, on behalf of himself and all      Case No.  3:18-cv-04939
    others similarly situated,
18                                                 CLASS ACTION
                          Plaintiff,
19                                                 **CLASS ACTION COMPLAINT FOR
          v.                                       VIOLATIONS OF FEDERAL
20                                                 SECURITIES LAWS**
    TESLA, INC. and ELON R. MUSK,
21                                                 JURY TRIAL DEMANDED
                          Defendants.
22

23

24

25

26

27

28

---

Complaint                                                          No. 3:18-cv-04939

Plaintiff Carlos Maia ("Plaintiff"), by his attorneys, on behalf of himself and all others similarly situated, alleges the following based upon the investigation of Plaintiff's counsel, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.  The investigation of counsel included, among other things, a review of Tesla, Inc. ("Tesla" or the "Company") public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases issued by the Company, media, news and analyst reports about the Company, conference calls with Company executives and investors, and other publicly available data, including, but not limited to, publicly available trading data relating to the price and trading volume of Tesla securities.

## I.    INTRODUCTION

1.    This action is a securities fraud action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder by the SEC, brought by Plaintiff on behalf of all persons and entities who purchased the publicly traded securities of Tesla from at least as early as August 7, 2018 through August 14, 2018, inclusive.

2.    Tesla designs, develops, manufactures and sells high-performance fully electric vehicles, and energy generation and storage systems, and also installs and maintains such systems and sells solar electricity.  Tesla purports to be the world's only vertically integrated sustainable energy company, offering end-to-end clean energy products, including generation, storage and consumption.

3.    Founded in 2003, the Company was formerly known as "Tesla Motors, Inc." and changed its name to Tesla, Inc. in February 2017.  Tesla is headquartered in Palo Alto, California, and its common stock trades on the NASDAQ Global Select market under the ticker symbol "TSLA."

4.    According to an August 2, 2018 article in *The Wall Street Journal* entitled "For Tesla's Elon Musk, Twitter is Sword Against Short Sellers," Defendant Elon R. Musk ("Musk"), Tesla's Chairman, Chief Executive Officer and co-founder, "has been engaged for some time in a digital cat-and-mouse fight with negative investors on his company's stock, and so far he is often

1  winning.  His extraordinary use of Twitter to battle short sellers has often been followed by a

2  jump in Tesla's stock price, hurting shorts in the process."

3      5.      On August 7, 2018, Musk issued a statement on Twitter that stated

4  "Am Considering taking Tesla private at $420.  Funding secured."

5      6.      In reaction to Musk's tweet, the price of Tesla's common stock increased reaching

6  an intra-day high of $387.46 per share, $45.47 per share higher than the previous day's closing

7  price, and closed at $379.57 per share on August 7, 2018, an increase of $37.58 per share, or

8  approximately 11%.

9      7.      The next day, August 8, 2018, reports began to emerge that the SEC had made

10  inquiries into Musk's tweet and whether it was truthful that he had "funding secured" to take

11  Tesla private.

12      8.      Following this news, Tesla's shares fell $9.23 per share, or 2.4%, to close at

13  $370.34 per share on August 8, 2018.

14      9.      On August 9, 2018, Tesla shares continued to decline after facts emerged after the

15  market closed on August 8, 2018 and later on August 9, 2018 that Musk's tweet had, in fact,

16  triggered an SEC inquiry.  For example, *The Wall Street Journal* reported that the SEC "has

17  asked Musk to produce proof that he's secured funding. . ." and numerous media sources reported

18  that Musk did not have funding locked in before he tweeted "funding secured."

19      10.     Following this news, Tesla shares fell by more than $17.89 per share, nearly 5%,

20  to close at $352.45 per share on August 9, 2018, resulting in a two-day decline of more than 7%.

21      11.     As a result of Defendants' wrongful acts and omissions, and the precipitous

22  decline in the market value of the Company's securities, Plaintiff and other Class members have

23  suffered significant losses and damages.

24  **II.     JURISDICTION AND VENUE**

25      12.     The claims asserted arise under Sections 10(b) and 20(a) of the Exchange Act, 15

26  U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

27  Jurisdiction is conferred by Section 27 of the Exchange Act.

28

13.     Venue is proper in this District pursuant to Section 27 of the Exchange Act. Throughout the Class Period, Defendants made materially false and misleading representations to investors that were disseminated to investors in this District.

14.     In connection with the facts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.     PARTIES

15.     Plaintiff purchased Tesla securities as detailed in the certification attached hereto and was damaged thereby.

16.     Defendant Tesla is incorporated in Delaware, and the Company's principal executive offices are located at 3500 Deer Creek Road, Palo Alto, California.  Tesla's common stock trades on the NASDAQ under the symbol "TSLA."

17.     Defendant Musk co-founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chairman.  Musk owns or controls approximately 22% of the Company's shares.

18.     Defendants Tesla and Musk are collectively referred to as "Defendants".

## IV.     CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons and entities who purchased the publicly traded securities of Tesla from at least as early as August 7, 2018 through August 14, 2018, inclusive (the "Class Period").

20.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout the United States.  As of July 27, 2018, Tesla had 170,593,144 shares of common stock outstanding.

21.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)     whether Defendants violated the federal securities laws;

(b)     whether Defendants' statements omitted and/or misrepresented material facts;

(c)     whether the prices of Tesla securities were artificially inflated; and

(d)     the extent of damage sustained by Class members and the appropriate measure of damages.

22.     Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have sustained damages because of Defendants' unlawful activities alleged herein.  Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff.  Plaintiff has no interests which are contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

23.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

**V.      FALSE AND MISLEADING STATEMENTS**

24.     On August 7, 2018 starting at 9:48am, Musk began issuing public statements on Twitter that he intends to take Tesla private (the "Going-Private Transaction").  Specifically, Musk tweeted the following statements, among others:

- "Am Considering taking Tesla private at $420.  Funding secured."

- "Shareholders could either to sell [sic] at 420 or hold shares & go private."

- "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote."

25.     On August 7, 2018 at approximately 3:30pm, Musk caused Tesla to release the following statement via Tesla's corporate blog, the substance of which was a memo sent to Tesla employees with Musk's rationale for the privatization of Tesla at $420 per share.

Taking Tesla Private
August 7, 2018

*The following email was sent to Tesla employees today:*

Earlier today, I announced that I'm considering taking Tesla private at a price of $420/share. I wanted to let you know my rationale for this, and why I think this is the best path forward.

First, a final decision has not yet been made, but the reason for doing this is all about creating the environment for Tesla to operate best. As a public company, we are subject to wild swings in our stock price that can be a major distraction for everyone working at Tesla, all of whom are shareholders. Being public also subjects us to the quarterly earnings cycle that puts enormous pressure on Tesla to make decisions that may be right for a given quarter, but not necessarily right for the long-term. Finally, as the most shorted stock in the history of the stock market, being public means that there are large numbers of people who have the incentive to attack the company.

I fundamentally believe that we are at our best when everyone is focused on executing, when we can remain focused on our long-term mission, and when there are not perverse incentives for people to try to harm what we're all trying to achieve.

This is especially true for a company like Tesla that has a long-term, forward-looking mission. SpaceX is a perfect example: it is far more operationally efficient, and that is largely due to the fact that it is privately held. This is not to say that it will make sense for Tesla to be private over the long-term. In the future, once Tesla enters a phase of slower, more predictable growth, it will likely make sense to return to the public markets.

Here's what I envision being private would mean for all shareholders, including all of our employees.

First, I would like to structure this so that all shareholders have a choice. Either they can stay investors in a private Tesla or they can be bought out at $420 per share, which is a 20% premium over the stock price following our Q2 earnings call (which had already increased by 16%). My hope is for all shareholders to remain, but if they prefer to be bought out, then this would enable that to happen at a nice premium.

Second, my intention is for all Tesla employees to remain shareholders of the company, just as is the case at SpaceX. If we were to go private, employees would still be able to periodically sell their shares and exercise their options. This would

enable you to still share in the growing value of the company that you have all worked so hard to build over time.

Third, the intention is not to merge SpaceX and Tesla. They would continue to have separate ownership and governance structures. However, the structure envisioned for Tesla is similar in many ways to the SpaceX structure: external shareholders and employee shareholders have an opportunity to sell or buy approximately every six months.

Finally, this has nothing to do with accumulating control for myself. I own about 20% of the company now, and I don't envision that being substantially different after any deal is completed.

Basically, I'm trying to accomplish an outcome where Tesla can operate at its best, free from as much distraction and short-term thinking as possible, and where there is as little change for all of our investors, including all of our employees, as possible.

This proposal to go private would ultimately be finalized through a vote of our shareholders. If the process ends the way I expect it will, a private Tesla would ultimately be an enormous opportunity for all of us. Either way, the future is very bright and we'll keep fighting to achieve our mission.

Thanks,
Elon

26.     Defendants' statements in paragraphs 24-25 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose (1) that the Defendants had not secured funding for the Going-Private Transaction; (2) that Musk's statements that the Going-Private Transaction only required shareholder approval were false since the Going-Private Transaction required approval by the Company's Board of Directors and even the Board was unaware of the funding referred to by Musk; (3) that the status and likelihood of the Going-Private Transaction was misrepresented to the market because financing for it had not been secured and Board approval was required, and (4) as a result of the foregoing, Defendants' statements about Tesla's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

27.     On August 13, 2018, after the markets closed, Musk tweeted "I'm excited to work with Silver Lake and Goldman Sachs as financial advisors, plus Wachtell, Lipton, Rosen & Katz and Munger, Tolles & Olson as legal advisors, on the proposal to take Tesla private."

28.     Defendants' statements in paragraph 27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose that Musk had no formal agreement with either Goldman Sachs or Silver Lake at the time of the tweet on August 13, 2018, and as a result the status and likelihood of the Going-Private Transaction continued to be misrepresented.

## VI.     THE TRUTH BEGINS TO EMERGE

29.     On August 7, 2018, after the market closed, a number of reports emerged suggesting Musk's funding claim could lead to regulatory scrutiny because regulators reportedly might view the funding claim as an attempt to manipulate the price of Tesla's securities.

30.     On August 8, 2018, members of Tesla's Board – Brad Buss, Robyn Denholm, Ira Ehrenpreis, Antonio Gracias, Linda Johnson Rice, and James Murdoch – issued the following public statement before the market opened:

> Last week, Elon opened a discussion with the board about taking the company private.  This included discussion as to how being private could better serve Tesla's long-term interests, and also addressed the funding for this to occur.  The board has met several times over the last week and is taking the appropriate next steps to evaluate this.

31.     The statement in paragraph 30 issued by certain Tesla Board members on August 8, 2018 began to reveal to the public that the Going-Private Transaction was still being evaluated and could be rejected by the Board.  This contradicted Musk's representation the prior day that the Going-Private Transaction was all but certain, with only a shareholder vote needed to complete it.

32.     Additionally, as the market drew to a close on August 8, 2018, reports on *Bloomberg* stated that the SEC had made inquiries into Musk's tweet regarding secured funding and whether it was truthful.

33.     Following the after-market August 7, 2018 and August 8, 2018 news, Tesla's shares fell $9.23 per share, or 2.43%, to close at $370.34 per share.

34.     On August 8, 2018 post-market close and on August 9, 2018, reports emerged that Musk's tweet "[f]unding secured" had, in fact, triggered an SEC inquiry.  For example, an article published in *The Wall Street Journal* entitled "SEC Probes Tesla CEO Musk's Tweets" reported that "[t]he regulator is examining whether Musk's statement was truthful and why the disclosure was made on Twitter."  The article further stated as follows:

> U.S. regulators are asking Tesla, Inc. whether Chief Executive Elon Musk was truthful when he tweeted that he had secured funding for what would be the largest-ever corporate buyout, people familiar with the matter said.  Officials at the Securities and Exchange Commission want to know whether Mr. Musk had a factual basis for tweeting Tuesday that the going-private transaction was all but certain, with only a shareholder vote needed to pull it off, the people said.

> The SEC's inquiries, which originated from the agency's San Francisco office, suggest Tesla could come under an enforcement investigation if regulators suspect that Mr. Musk's statement was misleading or false.

35.     Following this news, Tesla's shares declined by $17.89 per share, or 4.83%, to close at $352.45 per share, resulting in a two-day decline of more than 7%.

36.     Subsequently, on August 9, 2018, after the market closed, CNBC and Bloomberg reported that Tesla's Board planned to meet with financial advisers the following week and would likely tell Musk to recuse himself while a special committee of independent directors considers his proposal.  This again refutes Musk's original tweets that funding was secure and that the Going-Private Transaction was a near certainty that only needed to be approved by shareholders.

37.     On August 13, 2018, Musk posted an "Update on Taking Tesla Private" on Tesla's blog which stated, in part, as follows and demonstrates that Musk knew he did not have funding secured when he tweeted this:

**Why did I say "funding secured"?**

> Going back almost two years, the Saudi Arabian sovereign wealth fund has approached me multiple times about taking Tesla private.  They first met with me at the beginning of 2017 to express this interest because of the important need to diversify away from oil.  They then held several additional meetings with me over the next year to reiterate this interest and to try to move forward with a going

private transaction.  Obviously, the Saudi sovereign fund has more than enough capital needed to execute on such a transaction.

Recently, after the Saudi fund bought almost 5% of Tesla stock through the public markets, they reached out to ask for another meeting.  That meeting took place on July 31st.  During the meeting, the Managing Director of the fund expressed regret that I had not moved forward previously on a going private transaction with them, and he strongly expressed his support for funding a going private transaction for Tesla at this time.  I understood from him that no other decision makers were needed and that they were eager to proceed.

I left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed, and that it was just a matter of getting the process moving. This is why I referred to "funding secured" in the August 7th announcement.

Following the August 7th announcement, I have continued to communicate with the Managing Director of the Saudi fund.  He has expressed support for proceeding **subject to financial and other due diligence and their internal review process for obtaining approvals**.  He has also asked for additional details on how the company would be taken private, including any required percentages and any regulatory requirements.  [Emphasis added.]

Another critical point to emphasize is that before anyone is asked to decide on going private, full details of the plan will be provided, including the proposed nature and source of the funding to be used.  However, it would be premature to do so now.  **I continue to have discussions with the Saudi fund, and I also am having discussions with a number of other investors, which is something that I always planned to do since I would like for Tesla to continue to have a broad investor base.** I t is appropriate to complete those discussions before presenting a detailed proposal to an independent board committee. [Emphasis added.]

It is also worth clarifying that most of the capital required for going private would be funded by equity rather than debt, meaning that this would not be like a standard leveraged buyout structure commonly used when companies are taken private.  I do not think it would be wise to burden Tesla with significantly increased debt.

Therefore, reports that more than $70B would be needed to take Tesla private dramatically overstate the actual capital raise needed.  The $420 buyout price would only be used for Tesla shareholders who do not remain with our company if it is private.  **My best estimate right now is that approximately two-thirds of shares owned by all current investors would roll over into a private Tesla**. [Emphasis added.]

38.     As pointed out by a number of news sources, the above statements in paragraph 37 confirm that Musk knew at the time of his August 7, 2018 tweets that he had engaged in nothing more than some abstract discussions about a hypothetical deal when he tweeted "funding

secured" and "[o]nly reason why this is not certain is that it's contingent on a shareholder vote." Musk knew any deal was subject to financial and other due diligence and that funding was not secured as there was no binding term sheet.  Additionally, Musk's offer to buy Tesla at $420 per share is apparently contingent on a large majority, approximately two-thirds, of shareholders turning the deal down.

39.     According to a *New York Times* article published on August 13, 2018, entitled "Elon Musk's Tweet on Taking Tesla Private Surprised Even Its Board," "[a] person with direct knowledge of the Tesla board's thinking said some members of the board had been totally blindsided by Mr. Musk's decision to air his plan on Twitter."  This further demonstrates that Musk's abrupt tweet had not been cleared ahead of time by the Company's Board.  Additionally, the *New York Times* article points out that "[t]he tweet did not disclose the sum he had supposedly secured, its source, or any terms of the plan" and therefore Musk knew, or should have known that his tweet would drive up the price of Tesla shares and manipulate the pricing of all Tesla securities based on false and misleading information.

40.     On August 14, 2018, *Bloomberg* published an article entitled "Goldman Is Said to Have No Mandate When Musk Tweeted," reporting that neither Goldman Sachs or Silver Lake were yet working with Musk pursuant to a signed agreement or in an official capacity when Musk said on Twitter late Monday, August 13, 2018, both firms were working with him as financial advisers.  Following this news, Tesla's shares fell $8.77 per share, or nearly 2.5%, to close at $347.64 per share on August 14. 2018.

## VII.     ADDITIONAL SCIENTER ALLEGATIONS

41.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Musk, by virtue of his receipt of information reflecting the true facts regarding Tesla, his control over, and/or receipt and/or

modification of Tesla's allegedly materially misleading misstatements and/or his associations with the Company which made him privy to confidential proprietary information concerning Tesla, participated in the fraudulent scheme alleged herein.

42.    Defendants knew or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.   The ongoing fraudulent scheme described in this complaint could not have been perpetrated without the knowledge and complicity of the personnel at the highest level of the Company, particularly Musk.

43.    Defendants had the motive and opportunity to perpetrate the fraudulent scheme and course of business described herein because Musk was the most senior officer of Tesla, issued statements and press releases on behalf of Tesla and had the opportunity to commit the fraud alleged herein.

44.    Defendants were motivated to conceal the fraud alleged herein in order to inflate the price of Tesla's shares, which in turn would hurt short sellers who were betting that the price of Tesla shares would go down.  When Tesla shares sharply increased in price following Musk's tweets, short sellers incurred losses as they sought to cover and unwind their short positions.  The use of Twitter to cause losses for short sellers of Tesla stock was consistent with Musk's long-running battle with negative investors.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

45.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Tesla securities and operated as a fraud or deceit on Class Period purchasers of Tesla securities by misrepresenting the certainty and funding for the Going-Private Transaction.   Defendants achieved this by making positive statements about the funding and other aspects of the Going-Private Transaction, or disregarded with deliberate recklessness, the adverse facts alleged above.

46.    Later, however, when Defendants' prior misrepresentations were disclosed and became apparent to the market, the price of Tesla's securities fell precipitously as the prior artificial inflation came out of Tesla's share price.

47.     As a result of their purchases of Tesla securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

48.     As a direct result of the public revelations regarding the truth about the condition of Tesla's business and the negative adverse factors that had been impacting Tesla's business during the Class Period, the price of Tesla's securities materially declined.  This drop removed the inflation from Tesla's share price, causing real economic loss to investors who purchased Tesla securities during the Class Period.

49.     The decline in the price of Tesla securities was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of the decline in the price of Tesla securities negates any inference that the loss suffered by Plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.

## IX.     FRAUD-ON-THE-MARKET DOCTRINE

50.     At all relevant times, the market for Tesla's securities was an efficient market for the following reasons, among others:

(a)     The Company's common stock met the requirements for public listing and were listed and actively traded on the Nasdaq, a highly efficient market;

(b)     As a regulated issuer, the Company filed periodic public reports with the SEC; and

(c)     The Company regularly issued press releases which were carried by national news wires.  Each of these releases was publicly available and entered the public marketplace.

51.     As a result, the market for the Company's publicly traded securities promptly digested current information with respect to Tesla from all publicly available sources and reflected such information in the price of the Company's securities.  Under these circumstances, all purchasers of the Company's publicly traded securities during the Class Period suffered

similar injury through their purchase of the publicly traded securities of Tesla at artificially inflated prices and a presumption of reliance applies.

## X. NO SAFE HARBOR

52. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by Musk who knew that those statements were false when made.

## XI. CLAIMS FOR RELIEF

### COUNT I
### For Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Against All Defendants

53. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55. Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they:

(a) Employed devices, schemes and artifices to defraud;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were

made not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Tesla's publicly traded securities during the Class Period.

56.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Tesla's publicly traded securities.  Plaintiff and the Class would not have purchased Tesla's securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

57.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Tesla's securities during the Class Period.

<u>**COUNT II**</u>
**For Violation of Section 20(a) of the Exchange Act**
**Against Musk**

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if full set forth herein.

59.     Musk acted as a controlling person of Tesla within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of his high-level position, and his ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC or disseminated to the investing public, Musk had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff alleges are false and misleading.  Musk was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, Musk had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the representations giving rise to the securities violations as alleged herein, and exercised the same.

61.     As set forth above, Tesla and Musk each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of his position as a controlling person, Musk is liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Tesla's and Musk's wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein;

B.     Awarding damages, including interest; awarding reasonable costs, including attorneys' fees; and

C.     Awarding such equitable/injunctive relief as the Court may deem proper.

## XIII.   JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 14, 2018             KAPLAN FOX & KILSHEIMER LLP

By:   /s/ Laurence D. King
          Laurence D. King

Laurence D. King (SBN 206423)
*lking@kaplanfox.com*
Mario M. Choi (SBN 243409)
*mchoi@kaplanfox.com*
350 Sansome Street, Suite 400
San Francisco, CA  94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4709

KAPLAN FOX & KILSHEIMER LLP
Frederic S. Fox (to be admitted *pro hac vice*)
*ffox@kaplanfox.com*
Donald R. Hall (to be admitted *pro hac vice*)
*dhall@kaplanfox.com*
Jeffrey P. Campisi (to be admitted *pro hac vice)*
*jcampisi@kaplanfox.com*
850 Third Avenue, 14th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

*Attorneys for Plaintiff*

# Attachment

## **CERTIFICATION**

I, Carlos Maia, hereby certify and swear as follows:

1. I have reviewed a complaint prepared against Tesla, Inc. alleging violations of the securities laws and authorize the filing of a complaint.

2. I am willing to serve as a representative party on behalf of a class, or to be a member of a group representing a class, including providing testimony at deposition and trial, if necessary.

3. Within the 3-year period preceding the date hereof, I sought to serve as a representative party on behalf of a class in the following action brought under the federal securities laws:

   *Maia v. Qudian Inc.*, No. 17-cv-09796 (S.D.N.Y.).

4. My transactions in Tesla, Inc. securities during the proposed class period are set forth in Schedule A, which is attached hereto.

5. I did not purchase Tesla, Inc. securities at the direction of my counsel, or in order to participate in any private action under the federal securities laws; and

6. I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court.


I declare under penalty of perjury that the foregoing is true and correct.

Date: ____8 / 14____, 2018

_____
CARLOS MAIA

## Schedule A

### Carlos Maia Transactions in Tesla, Inc. Securities:

| Security | Transaction | Trade Date | Shares | Price |
|---|---|---|---|---|
| Tesla Inc. | Buy | 8/7/2018 | 500.00 | $361.93 |
| Tesla Inc. | Buy | 8/7/2018 | 100.00 | $362.25 |
| Tesla Inc. | Buy | 8/7/2018 | 100.00 | $362.23 |
| Tesla Inc. | Buy | 8/7/2018 | 100.00 | $362.20 |
| Tesla Inc. | Buy | 8/7/2018 | 100.00 | $362.19 |
| Tesla Inc. | Buy | 8/7/2018 | 100.00 | $362.17 |
| Tesla Inc. | Buy | 8/7/2018 | 400.00 | $361.41 |
| Tesla Inc. | Buy | 8/7/2018 | 100.00 | $361.12 |
| Tesla Inc. | Buy | 8/7/2018 | 900.00 | $361.71 |
| Tesla Inc. | Buy | 8/7/2018 | 100.00 | $361.68 |
| Tesla Inc. | Buy | 8/7/2018 | 1000.00 | $365.70 |
| Tesla Inc. | Buy | 8/7/2018 | 10.00 | $363.46 |
| Tesla Inc. | Buy | 8/7/2018 | 1000.00 | $363.99 |
| Tesla Inc. | Buy | 8/7/2018 | 1000.00 | $365.82 |
| Tesla Inc. | Buy | 8/7/2018 | 1000.00 | $362.84 |
| Tesla Inc. | Buy | 8/7/2018 | 500.00 | $376.08 |
| Tesla Inc. | Sell | 8/7/2018 | (40.00) | $362.08 |
| Tesla Inc. | Sell | 8/7/2018 | (200.00) | $361.92 |
| Tesla Inc. | Sell | 8/7/2018 | (200.00) | $361.91 |
| Tesla Inc. | Sell | 8/7/2018 | (60.00) | $361.90 |
| Tesla Inc. | Sell | 8/7/2018 | (300.00) | $361.43 |
| Tesla Inc. | Sell | 8/7/2018 | (400.00) | $361.42 |
| Tesla Inc. | Sell | 8/7/2018 | (192.00) | $361.41 |
| Tesla Inc. | Sell | 8/7/2018 | (108.00) | $361.41 |
| Tesla Inc. | Sell | 8/7/2018 | (1000.00) | $363.20 |
| Tesla Inc. | Sell | 8/7/2018 | (1000.00) | $366.06 |
| Tesla Inc. | Sell | 8/7/2018 | (1010.00) | $364.77 |
| Tesla Inc. | Sell | 8/7/2018 | (2000.00) | $365.33 |
| Tesla Inc. | Sell | 8/7/2018 | (500.00) | $377.51 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $373.70 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $373.68 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $374.05 |
| Tesla Inc. | Buy | 8/8/2018 | 1000.00 | $374.57 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $377.00 |
| Tesla Inc. | Buy | 8/8/2018 | 390.00 | $378.48 |
| Tesla Inc. | Buy | 8/8/2018 | 60.00 | $378.47 |
| Tesla Inc. | Buy | 8/8/2018 | 25.00 | $378.42 |
| Tesla Inc. | Buy | 8/8/2018 | 25.00 | $378.41 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $377.05 |
| Tesla Inc. | Buy | 8/8/2018 | 480.00 | $376.32 |
| Tesla Inc. | Buy | 8/8/2018 | 10.00 | $376.31 |
| Tesla Inc. | Buy | 8/8/2018 | 10.00 | $376.30 |

| | | | | |
|---|---|---|---|---|
| Tesla Inc. | Buy | 8/8/2018 | 1000.00 | $375.07 |
| Tesla Inc. | Buy | 8/8/2018 | 1000.00 | $375.63 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $375.35 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $375.36 |
| Tesla Inc. | Buy | 8/8/2018 | 65.00 | $373.46 |
| Tesla Inc. | Buy | 8/8/2018 | 60.00 | $373.45 |
| Tesla Inc. | Buy | 8/8/2018 | 25.00 | $373.44 |
| Tesla Inc. | Buy | 8/8/2018 | 150.00 | $373.43 |
| Tesla Inc. | Buy | 8/8/2018 | 100.00 | $373.42 |
| Tesla Inc. | Buy | 8/8/2018 | 100.00 | $373.41 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $374.70 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $374.13 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $371.98 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $372.29 |
| Tesla Inc. | Buy | 8/8/2018 | 1000.00 | $371.50 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $371.00 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $371.89 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $371.55 |
| Tesla Inc. | Buy | 8/8/2018 | 350.00 | $373.08 |
| Tesla Inc. | Buy | 8/8/2018 | 50.00 | $373.07 |
| Tesla Inc. | Buy | 8/8/2018 | 50.00 | $373.05 |
| Tesla Inc. | Buy | 8/8/2018 | 50.00 | $373.04 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $372.42 |
| Tesla Inc. | Buy | 8/8/2018 | 400.00 | $375.25 |
| Tesla Inc. | Buy | 8/8/2018 | 100.00 | $375.24 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $374.94 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $373.93 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $373.86 |
| Tesla Inc. | Buy | 8/8/2018 | 183.00 | $374.64 |
| Tesla Inc. | Buy | 8/8/2018 | 723.00 | $374.64 |
| Tesla Inc. | Buy | 8/8/2018 | 94.00 | $374.62 |
| Tesla Inc. | Buy | 8/8/2018 | 576.00 | $374.55 |
| Tesla Inc. | Buy | 8/8/2018 | 200.00 | $374.55 |
| Tesla Inc. | Buy | 8/8/2018 | 224.00 | $374.54 |
| Tesla Inc. | Buy | 8/8/2018 | 1000.00 | $374.60 |
| Tesla Inc. | Buy | 8/8/2018 | 800.00 | $374.63 |
| Tesla Inc. | Buy | 8/8/2018 | 99.00 | $374.55 |
| Tesla Inc. | Buy | 8/8/2018 | 1.00 | $374.54 |
| Tesla Inc. | Buy | 8/8/2018 | 100.00 | $374.54 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $374.09 |
| Tesla Inc. | Buy | 8/8/2018 | 252.00 | $374.13 |
| Tesla Inc. | Buy | 8/8/2018 | 129.00 | $374.12 |
| Tesla Inc. | Buy | 8/8/2018 | 19.00 | $374.11 |
| Tesla Inc. | Buy | 8/8/2018 | 100.00 | $374.10 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $372.02 |
| Tesla Inc. | Buy | 8/8/2018 | 199.00 | $372.28 |
| Tesla Inc. | Buy | 8/8/2018 | 70.00 | $372.27 |

| | | | | |
|---|---|---|---|---|
| Tesla Inc. | Buy | 8/8/2018 | 100.00 | $372.26 |
| Tesla Inc. | Buy | 8/8/2018 | 21.00 | $372.25 |
| Tesla Inc. | Buy | 8/8/2018 | 100.00 | $372.23 |
| Tesla Inc. | Buy | 8/8/2018 | 10.00 | $372.20 |
| Tesla Inc. | Buy | 8/8/2018 | 500.00 | $370.87 |
| Tesla Inc. | Buy | 8/8/2018 | 443.00 | $368.62 |
| Tesla Inc. | Buy | 8/8/2018 | 57.00 | $368.48 |
| Tesla Inc. | Sell | 8/8/2018 | (500.00) | $375.28 |
| Tesla Inc. | Sell | 8/8/2018 | (500.00) | $374.58 |
| Tesla Inc. | Sell | 8/8/2018 | (500.00) | $374.98 |
| Tesla Inc. | Sell | 8/8/2018 | (1000.00) | $375.00 |
| Tesla Inc. | Sell | 8/8/2018 | (500.00) | $377.72 |
| Tesla Inc. | Sell | 8/8/2018 | (72.00) | $377.43 |
| Tesla Inc. | Sell | 8/8/2018 | (463.00) | $377.42 |
| Tesla Inc. | Sell | 8/8/2018 | (965.00) | $377.42 |
| Tesla Inc. | Sell | 8/8/2018 | (25.00) | $375.57 |
| Tesla Inc. | Sell | 8/8/2018 | (975.00) | $375.55 |
| Tesla Inc. | Sell | 8/8/2018 | (267.00) | $375.67 |
| Tesla Inc. | Sell | 8/8/2018 | (200.00) | $375.50 |
| Tesla Inc. | Sell | 8/8/2018 | (2033.00) | $375.48 |
| Tesla Inc. | Sell | 8/8/2018 | (25.00) | $374.56 |
| Tesla Inc. | Sell | 8/8/2018 | (225.00) | $374.55 |
| Tesla Inc. | Sell | 8/8/2018 | (235.00) | $374.54 |
| Tesla Inc. | Sell | 8/8/2018 | (50.00) | $374.54 |
| Tesla Inc. | Sell | 8/8/2018 | (465.00) | $374.53 |
| Tesla Inc. | Sell | 8/8/2018 | (1000.00) | $372.33 |
| Tesla Inc. | Sell | 8/8/2018 | (1500.00) | $371.88 |
| Tesla Inc. | Sell | 8/8/2018 | (98.00) | $372.35 |
| Tesla Inc. | Sell | 8/8/2018 | (902.00) | $372.32 |
| Tesla Inc. | Sell | 8/8/2018 | (391.00) | $373.03 |
| Tesla Inc. | Sell | 8/8/2018 | (609.00) | $372.87 |
| Tesla Inc. | Sell | 8/8/2018 | (1000.00) | $375.34 |
| Tesla Inc. | Sell | 8/8/2018 | (1000.00) | $374.01 |
| Tesla Inc. | Sell | 8/8/2018 | (200.00) | $374.54 |
| Tesla Inc. | Sell | 8/8/2018 | (800.00) | $374.53 |
| Tesla Inc. | Sell | 8/8/2018 | (1000.00) | $374.80 |
| Tesla Inc. | Sell | 8/8/2018 | (200.00) | $374.62 |
| Tesla Inc. | Sell | 8/8/2018 | (15.00) | $374.61 |
| Tesla Inc. | Sell | 8/8/2018 | (500.00) | $374.55 |
| Tesla Inc. | Sell | 8/8/2018 | (285.00) | $374.54 |
| Tesla Inc. | Buy | 8/9/2018 | 1905.00 | $350.92 |
| Tesla Inc. | Buy | 8/9/2018 | 45.00 | $350.87 |
| Tesla Inc. | Buy | 8/9/2018 | 20.00 | $350.86 |
| Tesla Inc. | Buy | 8/9/2018 | 30.00 | $350.85 |
| Tesla Inc. | Buy | 8/9/2018 | 1200.00 | $351.93 |
| Tesla Inc. | Buy | 8/9/2018 | 761.00 | $351.86 |
| Tesla Inc. | Buy | 8/9/2018 | 39.00 | $351.81 |

| | | | | |
|---|---|---|---|---|
| Tesla Inc. | Buy | 8/9/2018 | 2000.00 | $351.71 |
| Tesla Inc. | Buy | 8/9/2018 | 2000.00 | $351.65 |
| Tesla Inc. | Sell | 8/9/2018 | (2650.00) | $350.80 |
| Tesla Inc. | Sell | 8/9/2018 | (1350.00) | $350.79 |
| Tesla Inc. | Sell | 8/9/2018 | (300.00) | $351.74 |
| Tesla Inc. | Sell | 8/9/2018 | (100.00) | $351.72 |
| Tesla Inc. | Sell | 8/9/2018 | (126.00) | $351.70 |
| Tesla Inc. | Sell | 8/9/2018 | (1.00) | $351.68 |
| Tesla Inc. | Sell | 8/9/2018 | (1.00) | $351.67 |
| Tesla Inc. | Sell | 8/9/2018 | (2.00) | $351.65 |
| Tesla Inc. | Sell | 8/9/2018 | (1.00) | $351.64 |
| Tesla Inc. | Sell | 8/9/2018 | (3469.00) | $351.64 |
| Tesla Inc. | Sell | 8/9/2018 | (250.00) | $349.31 |
| Tesla Inc. | Sell | 8/9/2018 | (3750.00) | $349.31 |